Clark B. GIBSON, Plaintiff–Appellant,

v.

Anthony M. FRANK, Defendant–Appellee.

No. 90–3961.

United States Court of Appeals, Sixth Circuit.

Argued July 15, 1991.

Decided Oct. 18, 1991.

---

**2.** The bankruptcy court emphasized its consideration only of subsection (2)(A) by observing:

> In their complaint, the plaintiffs do not specify the particular Code section under which they are seeking nondischargeability. However, the facts alleged in their complaint

clearly assert a [ ] cause of action under 11 U.S.C. § 523(a)(2)(A).

**3.** Plaintiffs specifically pleaded Howard's actions as being "tactics" and as a "con[c]erted, planned and deliberate effort to defraud the Creditors."

Robert F. Barnes, Jr. (argued and briefed), Cincinnati, Ohio, for plaintiff-appellant.

Donette D. Wiethe, Asst. U.S. Atty., Office of the U.S. Atty., Cincinnati, Ohio, David G. Karro (argued and briefed), Washington, D.C., and Maura A. Johnston, Office of Field Legal Services, USPS Eastern Region, Philadelphia, Pa., for defendant-appellee.

Before KEITH, Circuit Judge, WELLFORD, Senior Circuit Judge, and GADOLA *, District Judge.

WELLFORD, Senior Circuit Judge.

Clark B. Gibson, the plaintiff, has sued defendant, Anthony M. Frank as Postmaster General of the United States, under Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e, *et seq.*) by reason of the promotion of one Edward Fisbeck instead of plaintiff to the position of a Labor Relations Assistant (EAS–16) in the Cincinnati post office. The promotion in question was filled by Fisbeck, a white male, in August 1986 after procedures were followed to name a bi-racial three person selection committee to choose a person from among 36 applicants for this supervisory position. We AFFIRM the district court's grant of summary judgment to defendant for the reasons indicated.

When not selected, Gibson, a black-Indian, filed a charge of racial discrimination, and pursued this administrative claim through the employment opportunity commission. Administrative Law Judge (ALJ) von Borche made findings, an analysis and recommended a decision adverse to plaintiff on November 28, 1988, after hearings and consideration of plaintiff's contentions. The EEO counselor in the post office department had first conducted an investigation and "found no evidence to support an allegation of discrimination based on race." ALJ decision at 3.

The issue before the Commission, as it is now before this court on appeal, is "whether or not complainant's race ... was a factor in his non-selection for promotion." *Id.* The ALJ made certain findings that are essentially undisputed:

(1) Plaintiff is a mail handler with little supervisory experience and about three years full-time experience with the post office as mail handler or sorter.[1]

(2) "Training requirements [of the position sought] are ... college level understanding of business, personnel, or labor relations administration."

(3) "Minimum experience in labor relations, collective bargaining, and training activities, well-developed human relations and communication skills" were required.

(4) Five of 36 applicants were selected for interview and recommendation to the selecting official a white male. Four of the selected applicants, including Fisbeck, were white. One of the selected applicants was black.

---

* The Honorable Paul V. Gadola, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Gibson had, however, been for a short time "an *acting* supervisor and a union steward." *Id.* at 4. He had been a "communications technician" in the military.

(5) Plaintiff had a college degree and was pursuing a public relations and economics master's degree. He maintained that his qualifications equaled or exceeded those of the five persons chosen as "finalists" in the selection process. Gibson "particularly takes issue with the qualifications[, which he claims are minimal,] of the eventual selectee, Edward Fisbeck." [2]

(6) Gibson claims that Fisbeck was allowed improperly to serve in the position of detail to Labor Relations Assistant for a period more than 60 days by "temporary assignment." This, he contends, tainted the entire selection process.

(7) The selecting official was the labor relations representative of the postal service at Cincinnati; the chair-person of the three person promotion review board was a white male, Nelms, who held an EAS–19 position in labor relations with the postal service.

(8) A postal service manual provided in relevant part:

Temporary assignment to a higher grade vacant position, pending selection of a person for permanent assignment, is limited to a total of not more than 60 calendar days. If the employee on temporary assignment is a candidate for the vacant position, the higher grade assignment must be terminated before the 61st day. If that employee is not a candidate, the next higher level of management above the appointing official may approve an extension of that employee's temporary assignment beyond 60 days, until a selection is made and approved and the new incumbent assumes that position.[3]

Section 353.345.

(9) The black member of the selection board testified that it "reached a consensus as to who 'best met' the qualifications" of the five persons submitted to the selecting official; that she "did not know the successful candidates nor the Complainant," that Fisbeck "met the qualifications through his experiences as a supervisor, his training ... and the detail to labor relations." Nelms also testified as to the consensus selection process.

The ALJ found that Fisbeck had served "details as a labor relations assistant from April 1986 to ... July 11, 1986," and also "to several EAS–15 and –17 positions from 1981 through 1986." A black finalist submitted by the selection board, Anderson, had some college education but no degree; had experienced "Agency training courses" and "management academy." She had been with the postal service since 1983 and had been a supervisor since 1984 with "experience in EEO."

Bessler, one of the five who was recommended by the board, had a college degree and agency training and had been employed by the post office since 1976, a supervisor since 1979, and had experience in several labor relations "details."

Boyen, another of the four whites recommended, had been in the post office since 1974 and had been a superintendent since 1985, in an EAS–15 position. He also had served a "detail" in labor relations. Haynes had a college degree and a degree in business administration, "Agency training" and "management academy" experience. Haynes had been a "management trainee EAS–14 since 1984" and served several details to EAS–15 and –16 positions. All five persons were rated "without reservation" by their respective superiors.

The ALJ considered the plaintiff's contentions and concluded that no race discrimination was shown by Gibson, because the postal service had demonstrated that selection was accomplished in a "legitimate, nondiscriminatory" manner, and that "race was not a factor in the board's decision." The ALJ was persuaded that all five "successful applicants" held EAS or comparable positions, had "served details to labor relations or had experience in

---

**2.** Fisbeck had been with the postal service since 1959 and a supervisor since 1978, but had no college education.

**3.** Nelms had vacated the position in question, after serving since 1973, because of promotion. Nelms testified that he knew several (3 or 4) applicants, including some successful ones, but not complainant.

EEO, and had extensive Agency training," in contrast to Gibson.

The ALJ also concluded that the evidence was not clear about violation of the applicable regulation (§ 353.345) set out above, but held that regardless of this factor, Fisbeck clearly possessed the necessary qualifications and experience to have been awarded the position. The Eastern Region Postmaster General, after review, concurred with the ALJ's conclusions.

Defendant filed a summary judgment motion in district court in response to the subsequent complaint. Plaintiff has not effectively contested defendants' assertions that members of the selection board did not know him or his race.[4] There had been no openings in either of the sensitive labor relations positions in question in the Cincinnati post office since 1973.

Plaintiff responded to the motion for summary judgment by taking the position that his claim was based on "disparate impact," not disparate treatment. Because Fisbeck had allegedly been detailed temporarily for more than 60 days to the position in controversy by a member of the selection board, plaintiff claimed a denial of any legitimate opportunity to be promoted to that position. Gibson, to be sure, sued on his own behalf, not on behalf of any other allegedly qualified minority person.

The district court granted the motion for summary judgment, making similar findings to those made by the ALJ. The court concluded, among other things, that Gibson met all the qualifications for the position. It also concluded that there was no "*vacant* position" within the meaning of the regulation cited until July 5, 1986, when Nelms was promoted. He thus held that the regulation relied upon by Gibson was not violated with respect to the time that Fisbeck served temporarily on "detail."

The district court found as to Fisbeck:

14. Mr. Fisbeck does not have a college degree. The "college level understanding" required for the position at issue did not have to be reflected in a college degree, but could be high school

level with supervisory experience. Mr. Fisbeck, as a Supervisor of Mails from 1978 forward, had acquired experience in business; personnel; training; time keeping; monitoring of attendance; pay administration and grievance procedures. Mr. Fisbeck met the qualifications for the position through his experience as a Supervisor of Mails, other EAS level positions he had held, and the Labor Relations detail.

The district court also found that "during the period 1973 to 1986 (the year when the job opening involved in this case occurred), both black and caucasian employees were given temporary assignments, or 'details,' in the Labor Relations Department." The district judge concluded that the selection board members did not discriminate against Gibson by reason of race, and that the five chosen for final selection were "best qualified," particularly with regard to supervisory labor relations experience. Finally, the district court found Fisbeck's long experience most significant (apart from the questioned "detail" assignment) in concluding that his selection "was based on legitimate, nondiscriminatory reasons."

■ Without deciding whether the district court was correct or not in its assessment about whether Fisbeck served more than 60 days in the contested position, we conclude that even if a violation of a regulation occurred, this furnishes no basis for a private cause of action under Title VII to plaintiff. The purpose of the regulation may be to prevent long term filling of a postal service position by a temporary replacement; it may be to prevent a temporary "detail" person, such as Fisbeck, from having an undue advantage over others; it may be to encourage giving more than one person an opportunity to serve in a given vacancy; or there may be other purposes. A person who serves for longer than 60 days in the vacancy is not precluded from serving by reason of that situation, in any event, it does not constitute a basis for a Title VII cause of action.

■ We are also doubtful, although we make no finding on that question, that Gib-

4. Plaintiff suspected that Nelms may have  known him or been aware of his race.

son, in fact, met all qualifications for the position he sought even under summary judgment standards and giving him all reasonable favorable inferences, as did the district court. Again, even if he did, as assumed by the district court for summary judgment purposes, it seems clear that there was no *racial* basis demonstrated by Gibson in the board's selection of five evidently well qualified persons as finalists for interview and particular further investigation. If Gibson were held to have made out a prima facie case of disparate impact by reason of race, which he did *not* in our view establish, there is no showing by plaintiff that there was pretext in the articulation by defendant that race played no part in the selection of the five, one of whom was black, and, finally, the choice of Fisbeck based upon his long service, his supervisory experience, and his familiarity with this area of the postal service.[5]

Gibson, in effect, conceded at oral argument that he has no valid support for an appeal based upon discriminatory or disparate treatment. He has made no case to show any discriminatory intent in the selection process. He relies upon and presents no statistical evidence to support his contention of disparate impact by reason of his not being chosen for the promotion. He does not show, for example, the proportion of blacks who sought the position, the proportion of blacks qualified for an EAS–16 position in the relevant workforce, the proportion of blacks who hold EAS–16 or higher positions in the Cincinnati post office area, nor the proportion of blacks rejected in seeking supervisory positions of this type. One white person held the position for many years; we consider this insufficient to indicate disparate impact.

■ While statistical evidence is not absolutely essential in proving a disparate impact case, there must be proof of disparity using the proper standards for comparison. *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d

733 (1989); *Hazelwood School District v. United States*, 433 U.S. 299, 308, 97 S.Ct. 2736, 2741–42, 53 L.Ed.2d 768 (1977). "Disparate impact cases typically are concerned with facially neutral practices or standards that in fact work to place a disproportionate burden on a discrete group of employees who are protected under Title VII." *Lynch v. Freeman*, 817 F.2d 380, 383 (6th Cir.1987). Plaintiff has failed in carrying his "ultimate burden of persuasion regardless of the theory under which [he] proceeds." *Lynch*, 817 F.2d at 383. Though not required to prove his case by statistics, plaintiff has simply failed to show an uneven burden cast upon him or blacks generally or to rebut defendants' proof concerning a facially neutral, racially non-discriminatory system of selection.

We have reviewed the decision of the district court carefully and find no error in the grant of summary judgment.

We accordingly AFFIRM.

---

5. Had we concluded from a de novo examination of the joint appendix, the evidence submitted, and the arguments of counsel that Fisbeck was improperly or invalidly selected or not qualified, appropriate equitable relief would be a remand to select one of the remaining four finalists, all of whom had superior qualifications to Gibson.